IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re § | | |
| § | | |
| MOODY NATIONAL SHS § | Case No. 10-30172 | |
| HOUSTON H, LLC; § | | |
| § | | |
| Debtor. § | Chapter 11 | |

**DEBTOR'S RESPONSE TO EMERGENCY MOTION OF RLJ III – FINANCE HOUSTON, LLC FOR DETERMINATION (1) WHETHER ALL MONETARY AND NON-MONETARY DEFAULTS MUST BE CURED IN ORDER FOR A CREDITOR TO BE DEEMED UNIMPAIRED UNDER 11 U.S.C § 1124, AND (2) WHETHER TO PROCEED WITH THE CONFIRMATION HEARING**
(Re:  Docket No. 25)

Moody National SHS Houston H, LLC (the "Debtor") hereby files its Response (the "Response") to the Emergency Motion of RLJ III – Finance Houston, LLC ("RLJ") for Determination (1) Whether All Monetary and Non-Monetary Defaults Must be Cured in Order for a Creditor to be Deemed Unimpaired under 11 U.S.C. § 1124, and (2) Whether to Proceed with the Confirmation Hearing (the "Emergency Motion").  In support thereof, the Debtor respectfully shows as follows:

## BACKGROUND

1. The Debtor is in Chapter 11 because its new creditor RLJ, which bought the loan in November 2009, does not seek repayment of its loan but desires ownership of the valuable hotel that the Debtor partly owns.  The circumstances that led to Chapter 11 reflect that the original lender, Citigroup, led the Debtor to believe that it would negotiate a restructure of the debt or, at the very least, accept back payments without default interest and reinstate the Note.  Instead, Citigroup obtained an onerous cash management agreement and immediately sold the Note to RLJ, an entity whose only interest is to own the Debtor's hotel.  Attached hereto and

HOU_IMANAGE-770834.2

incorporated herein is the affidavit of Brett Moody, a principal of the Debtor, setting forth the facts that led to this bankrupcy case. The affidavit was used in the lawsuit that the Debtor commenced against RLJ, which suit remains pending, *Moody National SHS Houston H, LLC, et al. vs. RLJ III Finance Houston, LLC and Citicorp N.A., Inc.*, Case No. 09-cv-04105, Southern District of Texas.

2. On January 13, 2010, the Debtor filed its plan of reorganization (the "Plan"). The Plan proposes to render RLJ's claim unimpaired pursuant to 11 U.S.C. § 1124.

3. On January 15, 2010, RLJ filed its Emergency Motion as well as a motion for an emergency hearing on the Emergency Motion (Doc. No. 26).

4. On January 19, 2010, the Court granted RLJ's motion for an emergency hearing on the Emergency Motion (Doc. No. 28). The Court set the emergency hearing for January 26, 2010 at 9:00 a.m.

## RESPONSE

5. The relief sought by RLJ in the Emergency Motion is a "determination by the Court whether the Debtor or someone else must cure all non-monetary defaults, whatever they may be." Thus, RLJ asks the Court to consider the purely legal question of what defaults the Debtor must cure to render RLJ unimpaired under § 1124.

6. RLJ states that it is "concerned that the Debtor is asserting . . . that the Debtor, as a small tenant in common holder, is not responsible for non-monetary defaults under the Deed of Trust." [Doc. No. 25, ¶ 16]. The Debtor can put RLJ at ease. As argued herein, the Debtor is not required to non-monetary defaults (if any even exist), but if the Court orders that there are non-monetary defaults that must be cured, the Debtor will either cure them, or cause them to be

cured. The Debtor has no intention of arguing that its minority interest affects any obligation to render RLJ unimpaired under § 1124.

7. Before addressing the substance of the Emergency Motion, the Debtor initially objects to the nature of the relief sought by RLJ. The Emergency Motion requests an improper advisory opinion on the confirmability of the Plan. The issue raised in the Emergency Motion is whether or not RLJ's claim is impaired under § 1124 based on the treatment proposed in the Plan. This question goes directly to the confirmability of the Plan and would more appropriately be considered as part of the confirmation hearing scheduled for February 4, 2010. Little practical relief can be granted to either party as a result of this emergency hearing. This non-evidentiary, emergency hearing places the Court's decision on the legal question in a vacuum. If RLJ waited to raise this argument until the confirmation hearing, the Court possibly could have avoided ruling on the legal question.

8. Specifically, if RLJ cannot prove defaults under the facts and its own documents, the legal question of whether non-monetary defaults must be cured would be moot. By way of example, the stretch of an argument that the Debtor is in default because it did not provide "certified" financial reports is not only incorrect but is not even a default under the loan documents. *See* ¶ 10(b) *infra*. RLJ did not buy the loan until November 2009. Prior to that, all required reports were sent to Citicorp, the holder of the Note. Moreover, pursuant to Section 17 of the Deed of Trust, financial reports need only be "in the format that Beneficiary requests." Financial reports were sent to Citicorp in the same format as they had customarily been sent. No contrary instructions were provided by Citicorp or RLJ. Therefore, no default has occurred. Moreover, if such a technical default were determined to have occurred, it can be easily cured by delivery of such "certified" reports.

9. The Emergency Motion states that RLJ does not know "whether the Debtor takes the position that no non-monetary defaults exist under the Loan." The Debtor answers this question in the affirmative. First, and foremost, the Debtor plans to argue at the confirmation hearing that, as of that date, there will be no non-monetary defaults under the Loan. As described above, that determination is not before the Court in this Emergency Motion because it is a factual question to be decided at the confirmation hearing. Second, if there are non-monetary defaults, the Debtor is not obligated to cure them, but only to compensate for "actual pecuniary loss" pursuant to § 1124(2)(D). Finally, if the Court determines a cure is required, the Debtor is capable of doing so.

10. The Emergency Motion alleges that the Plan does not mention the cure of any non-monetary defaults. However, the Emergency Motion never specifies what non-monetary defaults RLJ alleges exist. The list of RLJ's alleged non-monetary defaults is found in its Motion to Dismiss (Doc. No. 18, pp. 10-12), which is scheduled for hearing on February 4th. It is noteworthy that the latest Notice of Default, which was sent to the Debtor on November 25, 2009, identified only (b) below as a non-monetary default (failure of certification). The Debtor disputes that any of the below recently cobbled defaults are in fact defaults, but if they are, and if they are required to be cured, the Debtor can do so.

    (a)    Failure to comply with the terms of the Cash Management Agreement by not making deposits to the Clearing Account of amounts exceeding what the Master Tenant is allowed to retain;[1]

---

[1] By way of another example, this alleged non-monetary default exemplifies RLJ's struggle to find any non-monetary default in this case. First, if a default exists it is under the Cash Management Agreement and not the Deed of Trust that is being reinstated. Second, pursuant to the Cash Management Agreement, the Master Tenant is permitted to keep a certain amount of revenues from hotel operations each month. Once that limit is exceeded, the remaining revenues are to be transferred to the lender to be applied to debt service. The Motion to Dismiss states that approximately $160,000 should have been deposited for the months of November and December 2009. The amounts that the Debtor failed to send in these two months are included as part of the cure of monetary defaults under the Plan. These amounts are not due in addition to the total amount due to bring the loan current. Moreover, the Debtor attempted to contact RLJ after it purchased the note to discuss the mechanics of the Cash Management Agreement, but RLJ refused to communicate with the Debtor and immediately proceeded to accelerate the note.

      (b)      Failure to submit operating statements for November and December that were certified and included an analysis of deviations between the budgeted and actual amounts.

      (c)      Failure to submit a proposed budget for 2010.

      (d)      Failure to "promptly and diligently repair storm damage to the property from Hurricane Ike."

      (e)      Failure to operate and maintain the property in good and safe conditions as a result of the condition described above.

      (f)      Failure to comply with the Cash Management Agreement by funding sums in excess of operating expenses and working capital.

11. Even if these alleged non-monetary defaults exist, they are non-material, technical violations. By proffering these alleged minor contractual defaults, RLJ reveals its desperation to prevent the Debtor from reinstating the loan as permitted by § 1124.[2] These alleged defaults are nothing more than straws that RLJ is grasping at in a last-ditch effort to force current equity out of the property.

12. Turning to the substantive response to RLJ's Emergency Motion, the Debtor makes the following alternative arguments: (1) As a matter of law, the Debtor has no obligation to cure non-monetary defaults because its only obligation relative to non-monetary defaults is to compensate RLJ "for any actual pecuniary loss" under § 1124(2)(D) and RLJ has suffered no pecuniary loss from any of its alleged non-monetary defaults; (2) even if the Debtor is required to cure non-monetary defaults pursuant to § 1124(2)(A), its only obligation is to cure *material* non-monetary defaults, which the alleged defaults are not; (3) even if the Debtor is required to

---

Had RLJ ever provided notice to the Debtor of this default, the funds would have been transferred to the correct account. Thus, RLJ is complaining of an alleged technical default that it contributed to, if not caused.

[2] A large part of why RLJ is trumping up these non-monetary defaults is that the Debtor does not have to pay RLJ default interest in order to cure its monetary default under § 1124(2)(A). *See Southland Corp. v. Toronto-Dominion (In re Southland Corp.)*, 160 F.3d 1054, 1058 (5th Cir. 1998) (clarifying that its holding does not apply to § 1124 because the bank in that case was an impaired class that voted in favor of the plan, not an unimpaired, non-voting class under § 1124). In *Southland*, the Fifth Circuit cited a number of other cases that have held that a debtor does not have to pay default interest under § 1124. *Id.* (citing, e.g., *Great Western Bank & Trust v. Entz-White Lumber & Supply, Inc. (In re Entz-White Lumber & Supply, Inc.)*, 850 F.2d 1338 (9th Cir. 1988); *see also In re Zamani*, 390 B.R. 680, 685-87 (Bankr. N.D. Cal. 2008) (noting the ongoing validity of *Entz-White* and applying it to deny a bank default interest).

cure non-monetary defaults under § 1124(2)(A) and those defaults are material, then the Debtor is capable of curing any such defaults and RLJ will be unimpaired.

13. Section 1124(2) provides that a party is unimpaired if the plan:

Notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

> (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured;
> . . .
> (D) *if such claim or such interest arises from any failure to perform a nonmonetary obligation*, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), *compensates the holder of such claim* or such interest (other than the debtor or an insider) *for any actual pecuniary loss* incurred by such holder as a result of such failure.

14. RLJ's Emergency Motion conspicuously omits any reference to § 1124(2)(D), which was added as part of BAPCPA. RLJ only cites § 1124(2)(A) and (E) and a single case from 1984 standing for the proposition that non-monetary defaults must be cured. *Midland Mut. Life Ins. Co. v. Masnorth Corp. (In re Masnorth Corp.)*, 36 B.R. 335, 340 (Bankr. N.D. Ga. 1984). RLJ completely ignores the important addition of subsection (D) to the statute in 2005 which is applicable and controlling in this case. As a result of this addition, non-monetary defaults are now treated exclusively under § 1124(2)(D) rather than under § 1124(2)(A).[3]

---

[3] Even if this Court were to conclude that both § 1124(2)(A) and (D) apply to non-monetary defaults, the Debtor would not need to cure non-monetary defaults under § 1124(2)(A). Section 1124(2)(A) excludes from cure "a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured." A Bankruptcy Court for the Northern District of Texas has held that § 365(b)(2) "excuses performance by a debtor of 'nonmonetary obligations' which do not involve a penalty." *In re Mirant Corp.*, No. 03-46590, 2005 Bankr. LEXIS 909, at * 17 n.17 (Bankr. N.D. Tex. May 24, 2005) (citing *In re Mirant Corp.*, 2004 Bankr. LEXIS 1377 (Bankr. N.D. Tex. Sept. 15, 2004)). In its 2005 opinion, the court looked at the change that BAPCPA made to § 365(b)(2) and the legislative history behind this change. Even post-BAPCPA, the court concluded that its original interpretation of the statute was correct---a debtor is excused from curing any nonmonetary default under § 365(b)(2) and therefore also under § 1124(2)(A).

15. There is a long-standing cannon of statutory construction that a specific provision controls over a general provision. *See, e.g., Carmona v. Andrews*, 357 F.3d 535, 538 (5th Cir. 2004) ("Numerous panels of this court have articulated the canon of construction that states that a more specific provision controls a more general provision."); *United States v. John*, 309 F.3d 298, 302 n.5 (5th Cir. 2002) ("a principle of statutory construction provides that a specific provision takes precedence over a more general one."); *Kirby Corp. v. Pena*, 109 F.3d 258, 270 (5th Cir. 1997) ("It is a well-known canon of statutory construction that a specific statutory provision governs the general."). Additionally, more recently enacted statutes prevail over older statutes, particularly when the older statute is more general. *See, e.g., I.C.C. v. S. Ry. Co.*, 543 F.2d 534, 539 (5th Cir. 1976) ("Under the usual rules of statutory construction, where there is a conflict between an earlier statute and a subsequent enactment, the subsequent enactment governs."); *United States v. Lara*, 181 F.3d 183, 198 (1st Cir. 1999) ("Courts generally adhere to the principle that statutes relating to the same subject matter should be construed harmoniously if possible, and if not, that more recent or specific statutes should prevail over older or more general ones.")

16. Applying these principles to § 1124, it is apparent that § 1124(2)(A) is a general provision while § 1124(2)(D) is a specific provision that narrowly addresses non-monetary defaults. When a default falls within the parameters of subsection (D), which includes all of the defaults alleged in RLJ's Motion to Dismiss, a plan must only provide for "any actual pecuniary loss" incurred by the holder of such claim and is not required to "cure" under subsection (A). In other words, subsection (D) governs the treatment of non-monetary defaults.

17. The legislative history of BAPCPA confirms that Congress intended the statute to provide different treatment for monetary and non-monetary defaults under § 1124(2)(A) and (D). The House Report regarding § 1124(2)(D) states:

> Section 328(b) amends section 1124(2)(A) of the Bankruptcy Code to clarify that a claim is not impaired if section 365(b)(2) (as amended by this Act) expressly does not require a default with respect to such claim to be cured. In addition, it provides that any claim or interest that arises from the failure to perform *a nonmonetary obligation* (other than a default arising from the failure to operate a nonresidential real property lease subject to section 365(b)(1)(A)), *is impaired unless the holder of such claim* or interest (other than the debtor or an insider) *is compensated for any actual pecuniary loss* incurred by the holder as a result of such failure.

H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 83 (2005) (emphasis added).

18. The legislative history is straightforward and explicit—the holder of a claim that arises from a non-monetary default is impaired unless the debtor compensates him for any actual pecuniary loss as a result of such non-monetary default. That is all that is required. There is no mention of a requirement that the debtor must both cure the non-monetary defaults and also compensate for the pecuniary loss caused by such defaults. That would result in additional recovery for non-monetary defaults and would be inconsistent with the purpose of § 1124, which is to merely render a claimant unimpaired, not to enhance his position.

19. There is a paucity of post-BAPCPA case law discussing § 1124(2)(D). This should not be surprising given that good faith lenders would normally not raise non-monetary defaults when their monetary defaults are being cured under subsection (A).[4] A rational actor would not refuse to accept payment in full based on the type of immaterial, technical violations

---

[4] One such rare case that occurred post-BAPCPA is *JPMorgan Chase Bank N.A. v. Charter Communications Operating, LLC* (*In re Charter Communications*), 409 B.R. 649 (Bankr. S.D.N.Y. 2009). Charter sought to reinstate billions of dollars in loans held by Chase, but Chase objected based on certain technical, non-monetary defaults. The issue in *Charter* was whether the dispute was core or non-core. The court did not address the addition of § 1124(2)(D) and how it interacted with § 1124(2)(A). Instead, in *dicta*, the court cited only pre-BAPCPA case law. *Id.* at 653 n.3 (citing *In re Kizzac Mgmt. Corp.*, 44 B.R. 496, 501 (Bankr. S.D.N.Y. 1984)). Thus, it appears that no court or commentator has fully explored the argument made by the Debtor in this case that § 1124(2)(D) is the only provision of § 1124(2) that now applies to non-monetary defaults.

raised by RLJ. *See, e.g., In re Orlando Tennis World Dev. Co.*, 34 B.R. 558, 562 (Bankr. M.D. Fla. 1983) ("In the absence of any evidence or suggestion that Wells Fargo's security is impaired, we will not hold that what appears to be a technical default equals impairment."). Indeed, RLJ's intent in this case is clear; it wants to foreclose on the collateral and will do everything it can to prevent the Debtor from exercising its right to reinstate the loan under § 1124. The Debtor is in the unusual position of offering to pay all amounts owed in full yet having the lender respond that this is insufficient due to the alleged late production of budgets and reports.

20. Although it is a pre-BAPCPA case, the Debtor draws the Court's attention to *In re Mirant Corp.*, No. 03-46590, 2005 Bankr. LEXIS 909 (Bankr. N.D. Tex. May 24, 2005). The facts of the instant case are similar to the facts in *Mirant*. The *Mirant* court held a hearing on the bondholders' and noteholders' motions to determine whether they were impaired under § 1124(2).[5] The noteholders alleged that they were impaired because the plan did not account for curing certain non-monetary defaults including a "failure to comply with provisions of the Original Indenture requiring it to provide certain financial information" and a failure to cure certain cross-defaults. *Id*. at *7-8 n. 10. These allegations are similar to those alleged by RLJ in (a), (b), (c) and (f) above.

21. Regarding the alleged ongoing defaults, such as the reporting failures, *Mirant* noted that "in order for the Plan to impair it must create or countenance a *persisting* default under either the Original Indenture or the Supplemental Indenture." *Id*. at *16 (emphasis added). Later, the court states that § 1124 "neither requires the cure of [non-monetary obligation

---

[5] The fact that the *Mirant* court considered the issue of impairment in a separate hearing prior to confirmation does not undermine the Debtor's argument that RLJ seeks an inappropriate advisory opinion. The court noted that it agreed to consider this issue only because it had the *consent* of both parties to do so. 2005 Bankr. LEXIS 909, at *3 n.1. The Debtor has not consented to the premature determination of RLJ's impairment under the Plan.

reporting obligations] nor operates to eliminate the effect of continued reporting failures in the future.  Any created or ongoing defaults of this nature will not impair the claims of the holders of the Senior Notes, but should such defaults continue post-confirmation, the holders may declare the same." *Id*. at *29.  In other words, *Mirant* held that historical reporting, non-monetary defaults could not, under any circumstances, prevent a party from being impaired.  In the instant case, if the Court determines that the Debtor is in default for failing to deliver the complained of documents to RLJ, then RLJ is not impaired.  By then providing RLJ with these documents, the Debtor will have eliminated any persisting or continuing post-confirmation default.

22. Another relevant portion of *Mirant* is its discussion of cross-defaults.  *See id*. at *28-30.  The court concluded that "it would be inconsistent with the purposes of Chapter 11 to allow such cross-defaults to defeat non-impairment of the Senior Notes . . . Arguably, enforcing the cross-defaults against [the debtor] would be tantamount to enforcing an ipso facto clause, as [the debtor's] default on other bond and bank debt was an inevitable result of [the debtor's] chapter 11 filing." *Id*. at 28 & n. 27.  Several of the defaults alleged by RLJ are not defaults under the Note, but are cross-defaults under the Cash Management Agreement.  Pursuant to *Mirant*, such technical cross-defaults cannot defeat RLJ's non-impairment.

23. Next, assuming that the Court rejects the Debtor's argument that non-monetary defaults are now exclusively treated under § 1124(2)(D), the Debtor has to cure only *material* non-monetary defaults, which the defaults alleged by RLJ are not.

24. The issue of cure also arises in the analogous context of assuming executory contracts. Section 365, like section 1124, requires the cure of certain defaults.  However, "the debtor is precluded from assuming an executory contract only if the default was material or if the default caused 'substantial economic detriment.'" *In re New Breed Enters*., 278 B.R. 314

(Bankr. E.D.N.Y. 2002) (quoting *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990)); *see In re Empire Equities Capital Corp.*, 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009) (same); *In re Eagle Creek Subdivision, LLC*, 397 B.R. 758, 764 (E.D.N.C. 2008) ("Many courts also require that the default must be material or cause substantial economic detriment before a debtor is precluded from assuming an executory contract."). In applying this rule, the Ninth Circuit affirmed a bankruptcy court's finding that non-monetary defaults involving the failure to make repairs, abandonment, and improper assignment of a lease "were not of sufficient substance to preclude assumption of the lease." *Vanderpark Prop. Inc. v. Buchbinder* (*In re Windmill Farms, Inc.*), 841 F.2d 1467, 1473 (9th Cir. 1988). Similarly, other courts have found various types of non-monetary defaults to be immaterial. *See, e.g., In re Chapin Revenue Cycle Man., LLC*, 343 B.R. 728, 731 (Bankr. M.D. Fla. 2006) (holding that breach of licensing contract based on sharing of certain software code with prospective contractors was not material); *see also In re Walden Ridge Dev., LLC*, 292 B.R. 58, 67 (Bankr. D.N.J. 2003) (breach of time of the essence clause in a contract was immaterial where seller would receive sale price in full); *In re Vitanza*, No. 98-19611DWS, 1998 WL 808629, at *25 (Bankr. E.D. Pa. Nov. 13, 1998) (breach involving use of a sidewalk to operate a café was not material).

25. Applying the reasoning of these cases here, any alleged non-monetary default by the Debtor is immaterial for purposes of § 1124. First, failure to comply with the terms of the Cash Management Agreement is not an event of default under the Deed of Trust. Moreover, the material default alleged is the monetary obligation to transfer funds. This default will be cured as part of the payment to RLJ under the Plan. Further, the failure to submit budgets and operating statements are not material in that this failure did not affect either party's relative rights or obligations. Finally, the Debtor's obligation under the Deed of Trust is to "commence

and diligently prosecute" the repair of the property. The Debtor will establish at the confirmation hearing the extensive and timely measure it has taken to restore the property after Hurricane Ike.

26. Finally, assuming that the Debtor must cure non-monetary defaults and that the defaults alleged by RLJ are material, the Debtor is capable of curing any of the non-monetary defaults alleged and RLJ will be rendered unimpaired pursuant to § 1124. No defaults alleged by RLJ are patently incurable such that they would prevent the Debtor from prospectively curing those defaults under § 1124.

## CONCLUSION

For the foregoing reasons, the Debtor requests that this Court determine that the Debtor is not obligated to cure the non-monetary defaults alleged by RLJ in order to render RLJ's claim unimpaired under § 1124(2)(D).

Respectfully submitted this 25th day of January 2010.

**KING & SPALDING LLP**

By: /s/ Henry J. Kaim
Henry J. Kaim
Texas Bar No. 11075400
HKaim@kslaw.com
Eric M. English
Texas Bar No. 24062714
EEnglish@kslaw.com
Aaron J. Power
Texas Bar No. 24058058
APower@kslaw.com
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Fax: (713) 751-3290

**PROPOSED COUNSEL FOR THE DEBTOR**

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the forgoing has been served by electronic transmission upon the parties eligible to receive service through the Clerk's Office ECF facilities or by first class mail, postage prepaid, to the remaining parties listed on the attached service list on this 25th day of January 2010.

By: /s/ Henry J. Kaim
Henry J. Kaim