

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 10-30172 |
| MOODY NATIONAL SHS HOUSTON H, LLC, | § § | Chapter 11 |
| Debtor(s). | § § | Judge Isgur |

## MEMORANDUM OPINION

Debtor Moody National SHS Houston H, LLC ("Moody") proposes to cure the defaults on a promissory note secured by Moody's only asset, a tenant-in-common interest in a Marriott Hotel located in Houston, Texas ("Hotel"). RLJ III – Finance Houston, LLC ("RLJ") purchased the note after Moody was in default. RLJ's affiliates are in the business of owning Marriott hotels. Accordingly, RLJ prefers to foreclose on the Hotel rather than to hold a cured and performing note. The parties dispute what is required to cure the note.

For the reasons set forth below, the Court holds that:

1.    The note may be cured only by making all payments due on the note under applicable non-bankruptcy law;

2.    Default interest that accrued under state law is allowed and may not be retroactively forgiven upon payment of the cure amount; and

3.    Because of the peculiarities of the note, the default interest is payable, if at all, only at maturity.

### Background

On August 31, 2007, Moody borrowed $14,431,000 from Citigroup Global Markets Realty Corp. ("Citigroup"). The $14,431,000 debt was evidenced by a limited recourse note. The note was secured by a lien on the Hotel. As part of the original financing transaction and with Citigroup's knowledge and consent, the ownership of the Hotel was allocated to a number

of tenants-in-common. Following the allocation of interests, Moody was left with a 0.74956% undivided interest in the Hotel; however, the entire Hotel continued to serve as collateral for the $14,431,000 note.

The hotel was heavily damaged during Hurricane Ike. Payments to Citigroup were delayed or not made. The parties entered into workout arrangements concerning the debt. The debt was accelerated and default interest was imposed.

RLJ's affiliates are in the business of owning Marriott hotels.[1] During the workout period, RLJ acquired the note and deed of trust from Citigroup. RLJ's primary interest was (and remains) acquiring the Hotel through foreclosure. Accordingly, after RLJ acquired the note and deed of trust, it attempted to proceed with a foreclosure under Texas law.

On January 4, 2010, Moody filed this chapter 11 proceeding to stop the foreclosure.

The other tenants-in-common are not debtors, but have generally been unopposed to Moody's bankruptcy case.

Although Moody acknowledges its prior monetary defaults, it now seeks to cure the $14,431,000 note held by RLJ and to reinstate the note pursuant to a plan of reorganization under chapter 11 of the Bankruptcy Code.

## The Curing of a Default

It is undisputed that Moody failed to make all required pre-petition payments on the note, that the holder of the note accelerated the note, and that default interest accrued on the note. The precise timing and amount of the various events are not relevant to the issues before the Court.

This dispute is complex. The Court considers three principal issues:

---

[1] This is an allegation made by the Debtor that was not denied by RLJ. This allegation is included for background purposes only and plays no role in the determination made by the Court.

- Does reinstatement under § 1124(2) provide substantive relief from the requirement to pay default interest?

- Does the § 365(b)(2) exception under § 1124(2)(A) excuse payment of default interest to leave a claim unimpaired?

- Does § 1123(d)'s requirement to determine the amount necessary to cure a default "in accordance with the underlying agreement and applicable nonbankruptcy law" eliminate the requirement of default interest?

**1.      Does reinstatement under § 1124(2) provide substantive relief from the requirement to pay default interest?**

Moody claims, with some support, that § 1124(2) provides Moody with the ability to cure a default and to avoid the payment of default interest upon the curing of the default. RLJ alleges that any cure requires the payment of default interest and that § 1124(2) does not provide for forgiveness of the default interest.

The Court begins with an overview of the relevant provisions of the Bankruptcy Code:

| Statute | Application to Cure of Default |
|---|---|
| § 502 | Allowance or disallowance of claims. Claims are determined as of the petition date, generally in accordance with state law. |
| § 506(b) | Governs post-petition interest and fees. |
| § 1123(a)(5)(G) | Permits a plan to include a provision for the "curing or waiving of any default." |
| § 1123(d) | Requires that any cure of a default must be determined "in accordance with the underlying agreement and applicable nonbankruptcy law." |
| § 1124(2) | Defines whether a claim is impaired following a cure. |
| § 1126(f) | Provides that a class of holders of unimpaired claims is "conclusively presumed to have accepted the plan." |
| § 1129 | Sets the standards that must be satisfied to obtain confirmation of a chapter 11 plan. |

The essence of Moody's argument is that the definitional provisions of § 1124(2) provide a basis for the granting of substantive relief. This Court holds that § 1124(2) merely defines the standards for unimpaired status. That is, whether a cure under § 1123(d) is sufficient to deem a party unimpaired is defined by § 1124. If the treatment of a claim meets § 1124's definition of

3 / 20

unimpairment, then it is conclusively presumed that the holder of the claim has accepted the plan under § 1126(f). 11 U.S.C. § 1126(f). Accordingly, the Court rejects Moody's argument.

To best understand the Court's conclusions, it is helpful to explain the end-game. Moody wants to avoid the foreclosure of the Hotel. To avoid the foreclosure, Moody must obtain confirmation of a chapter 11 plan that allows Moody to reorganize its debts.[2] Section 1129(a) of the Bankruptcy Code provides the most direct route to confirmation. *See* 11 U.S.C. § 1129(a). One of the requirements under § 1129(a) is that each class of claims has accepted or is not impaired under the plan. 11 U.S.C. § 1129(a)(8). Accordingly, if Moody can propose a plan that leaves RLJ unimpaired, it could (with the approval of other classes of creditors) obtain confirmation of a chapter 11 plan of reorganization that would leave the current ownership of the Hotel intact and avoid a foreclosure.

The issue under § 1129(a)(8) is whether the proposed plan leaves RLJ unimpaired. If RLJ is unimpaired, then § 1126(f) provides that RLJ is conclusively presumed to have accepted the plan.

Section 1123 governs the contents of a plan. One of the provisions that may be included in a plan is a provision providing for the curing or waiving of any default. 11 U.S.C. § 1123(a)(5)(G). If the plan provides for the curing of a default, then the "amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d).[3]

---

[2] There is a substantial issue in this case that is beyond the scope of this present opinion. Although Moody was the original maker of the $14,431,000 promissory note that is secured by the Hotel, Moody owns only a 0.74956% tenant-in-common interest in the Hotel. The parties dispute whether a holder of less than a 1% interest in the Hotel can reorganize 100% of the debts that are secured by the Hotel. Although this Court will refer to the reorganization process as Moody's reorganization, the Court does not intend to infer that Moody may reorganize the entire debt. The "cure" issue and the "tenant-in-common" issue are legally discrete.

[3] In a separate analysis set forth below, the Court concludes that § 1123(d) includes a requirement to pay default interest. That conclusion is assumed for the analysis under this section regarding § 1124(2).

4 / 20

It is noteworthy that § 1123(a)(5)(G) does not require that every cure leave the holder of the claim unimpaired. *See* 11 U.S.C. § 1123(a)(5)(G). For example, a cure could conceivably provide for reinstatement of a mortgage only after 12 months of payments that would bring the mortgage current. Such a provision would not leave the holder unimpaired as the holder would be forced to accept payment over an extended time period and presumably could not foreclose during that period of delay. Because § 1124(2)(E) provides that a plan may not otherwise alter the holder's "legal, equitable or contractual rights," the holder of the to-be-cured claim would nevertheless be impaired if the holder were forced to forego declaring a default (and again accelerating the note) during the period prior to completion of the cure. 11 U.S.C. § 1124(2)(E); *Imperial Bank v. Tri-Growth Centre City, Ltd.* (*In re Tri-Growth Centre City, Ltd.*), 136 B.R. 848, 852 (Bankr. S.D. Cal. 1992).[4] *See also In re Holthoff*, 58 B.R. 216, 219 (Bankr. E.D. Ark. 1985).

It is § 1124 that defines whether a particular "cure" under § 1123(a)(5)(G) leaves the holder of the claim unimpaired. To leave the holder unimpaired, the holder must either retain all of its state law rights under subsection (1), or the plan must meet five requirements, as set forth in subsections (A) through (E) of subsection (2). 11 U.S.C. § 1124.

With respect to the five requirements under subsections (A) through (E) of § 1142(2), the plan must:

(A) Cure prepetition defaults, except for those of a kind specified in § 365(b)(2);

(B) Reinstate the original maturity;

---

[4] The Court notes that these decisions were rendered prior to the deletion of § 1124(3) in the 1994 amendments to the Bankruptcy Code. Section 1124(3) specified that payment must be made on the effective date. However, it was deleted after a bankruptcy court held that the provision did not require payment of post-confirmation interest. HR Rep. 103-834, 103rd Cong., 2nd Sess. 25-26 (Oct,. 4, 1994); 140 Cong. Rec. H10768 (Oct. 4, 1994). As explained above, cure payments may not be deferred pursuant to § 1124(2)(E).

> (C) Compensate the holder for reliance damages resulting from acceleration;
>
> (D) Compensate the holder for actual pecuniary losses arising out of non-monetary defaults; and
>
> (E) Not otherwise alter the holder's non-bankruptcy law rights.

11 U.S.C. § 1124(2)(A)-(E).

Moody incorrectly reads § 1124 as providing not just the measure of unimpairment, but the means to cure as well. Specifically, Moody points to § 1124(2)(B). Subsection (B) provides that the plan must reinstate the original maturity as one of the requirements to deem a party unimpaired under §1124(2). 11 U.S.C. § 1124(2)(B). Moody argues that because: (1) there is nothing in § 1124(2) that mandates the payment of default interest; (2) § 1124(2)(B) allows reinstatement of the note; and (3) reinstatement of the note would put the loan back to the pre-default terms, including the non-accrual of default interest, no default interest would be owed upon reinstatement. Upon reinstatement, the loan would be "cured." Accordingly, the "cure" amount does not include consideration of the accrual of any default interest.

Moody's interpretation is a circular attempt to define the "cure" amount through § 1124(2)(B), even though § 1124(2)(B) is merely definitional. It is an interpretation that expands the scope of § 1124 beyond its plain meaning. Instead of viewing § 1124 as simply setting forth the standards by which to determine a party's unimpaired status, Moody's interpretation perverts § 1124(2)(B) into a mechanism by which a debtor has substantive authority to truncate a creditor's contractual and state law rights to collect default interest. Moody's interpretation fundamentally ignores the plain meaning of § 1123(d) and its statutory structure as set forth elsewhere in this opinion. The Court declines to accept Moody's interpretation.

Nevertheless, Moody's interpretation has found some support in case law. Moody relies primarily on an opinion from the Ninth Circuit. *In re Entz-White Lumber & Supply, Inc.,* 850 F.2d 1338 (9th Cir. 1998). *Entz-White* explicitly holds that the curing of a default "means taking care of the triggering event and returning to pre-default conditions. The consequences are then nullified." *Id.* at 1340. The Ninth Circuit concluded that the cure of the default also included "avoidance of default penalties such as higher interest." *Id.* at 1342.

There are several problems with reliance on *Entz-White*. First, and with due respect, *Entz-White* does not give proper recognition to the relationships that exist between §§ 1123, 1124, 1126 and 1129 of the Bankruptcy Code. It attempts to read the Bankruptcy Code without reference to cure rights under state law. *Entz-White* deals with general bankruptcy principles, but fails to recognize the importance of unimpairment. An unimpaired creditor is excluded from participating in the plan confirmation process. Congress removed the creditor's participation rights because the creditor was not harmed (i.e., not impaired) by the bankruptcy plan. The Court cannot accept the argument that a reduction in the interest rate does not harm the creditor. Such a harm may be permissible for an impaired creditor; but the creditor is surely injured by the reduction. The plan impairs the creditor's rights. Accordingly, this Court would not follow *Entz-White* even in the absence of the other compelling factors listed below.

Second, § 1123(d) was added after *Entz-White*. To the extent that there was ambiguity as to how to cure a default when *Entz-White* was written, that ambiguity evaporated in 1994 when § 1123(d) was added. Section 1123(d) provides as follows:

> Notwithstanding subsection (a) of this section and sections 506(b), 1129(a)(7), and 1129(b) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1123(d).

Moody argues that § 1123(d) should be disregarded because its legislative history indicates that it is inapplicable. This argument is fully analyzed—and rejected—in the next section below.

The Court finds no basis to ignore the default interest rate provisions in the underlying agreement. There is no argument that they are not generally enforceable. The only argument advanced by Moody is that § 1124 grants substantive rights rather than defines unimpairment. As set forth above, the Court simply does not read the statute in that manner.

Third, *Entz-White's* vitality is—at best—questionable. In 1998, the Fifth Circuit held that "Congress, in bankruptcy amendments enacted in 1994, arguably rejected the *Entz-White* denial of contractual default interest rates." *Southland Corp. v. Toronto-Dominion* (*In re Southland Corp.*), 160 F.3d 1054, 1059 n.6 (5th Cir. 1998). No other Circuit has adopted *Entz-White*. Indeed, the Ninth Circuit's own Bankruptcy Appellate Panel has questioned whether *Entz-White* survived the 1994 amendments to the Bankruptcy Code. *Hassen Imports P'ship v. KWP Fin. VI (In re Hassen Imports P'ship),* 256 B.R. 916, 924 n.13 (9th Cir. B.A.P. 2000).

The Court notes that Judge Magner issued an extensive oral opinion that applies *Entz-White*. *In re M.B.S. Mgmt. Svcs.,* Case 07-12151, Transcript, May 3, 2008 (Bankr. E.D. La. 2008). Although this Court would not normally treat an oral rendition as having substantial precedential value, the Court highly values Judge Magner's thoughts and will give them due consideration. This Court nevertheless believes that Judge Magner incorrectly interprets § 1124 as establishing rights and responsibilities rather than as defining what it means to be impaired. For the reasons set forth in detail above, this Court simply does not read § 1124 in that light.

2.     **Does the § 365(b)(2) exception under § 1124(2)(A) excuse payment of default interest to leave a claim unimpaired?**

Moody has a second and independent argument. In its second argument, Moody claims that the § 365(b)(2) exception written into § 1124 should be applied to determine that RLJ would not be impaired even if it is not allowed its default interest. The basis of Moody's argument is that default interest is a penalty rate excepted under § 365(b)(2).

Section 1124(2)(A) provides that a claim is not impaired so long as the default is cured "other than a default of a kind specified in § 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured." 11 U.S.C. § 1124(2)(A). Section 365(b)(2) contains several exceptions. The relevant exception here is the "satisfaction of any penalty rate or penalty provision relating to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease." 11 U.S.C. § 365(b)(2)(D).

Although it is true that § 1124(2)(A) references defaults "of a kind" described in § 365(b)(2), the defaults described in § 365(b)(2) are defaults under leases or executory contracts. A mortgage note is neither a lease nor an executory contract. *Wootton v. Young Family Trust* (*In re Dixon*), No. 92-1754, 1993 WL 117806, at *3 (5th Cir. 1993); *see also Kaler v. Craig (In re Craig),* 144 F.3d 593, 596 (8th Cir. 1998).

It would stretch the language of § 1124(2)(A) far beyond its plain meaning to believe that it refers to any default rate of interest on any type of agreement. Indeed, none of Moody's published decisions hold that § 1124(2)(A)'s reference to § 365(b)(2) should be applied to a mortgage note. *Claremont* deals with the assumption and assignment of a franchise agreement. *Worthington v. GMC* (*In re Claremont Acquisition Corp. Inc.*), 113 F.3d 1029, 1030 (9th Cir. 1997). *Bankvest* applies the provision to computer leases. *Eagle Ins. Co. v. Bankvest Capital*

*Corp.* (*In re Bankvest Capital Corp.*), 360 F. 3d 291, 293 (1st Cir. 2004).  The unpublished *Mirant* decision deals with complex real estate leases.  *In re Mirant Corp.,* No. 03-46590, 2004 WL 5643668, at *1 (Bankr. N.D. Tex. Sept. 15, 2004).

This Court declines to apply the § 365(b)(2) exception that is contained in § 1124(2)(A) to determine whether the holder of a claim secured by a garden variety real estate mortgage is unimpaired.

3. **Does § 1123(d)'s requirement to determine the amount necessary to cure a default "in accordance with the underlying agreement and applicable nonbankruptcy law" eliminate the payment of default interest?**

Moody advances several arguments regarding the interpretation of § 1123(d).

Moody's first argument alleges that § 1123(d) was incorporated in the 1994 amendments to the Bankruptcy Code in order to terminate the effects of the Supreme Court's *Rake* decision. *Rake v. Wade,* 508 U.S. 464 (1993).  The legislative history reflects that § 1123(d) was, indeed, added to overrule *Rake*.  H.R. REP. 103-835, at 55 (1994); 140 CONG. REC. H10770 (Oct. 4, 1994).  *Rake* held that the Bankruptcy Code required that interest on interest be paid by a chapter 13 debtor to cure a home mortgage default.  *Rake,* 508 U.S. at 465.  In *Rake,* the Supreme Court held that interest on interest was required *notwithstanding state law to the contrary. Id.* at 467.  There are two significant problems with Moody's argument.  First, this Court must apply the statue as written; legislative history is only examined if a statute is ambiguous.  *Milavetz, Gallop & Milavetz, P.A. v. U.S.,* --- S. Ct. ----, Nos. 08-1119, 08-1225, 2010 WL 757616, at *5 n.3 (Mar. 8, 2010); *Whitfield v. United States,* 543 U.S. 209, 215-16, 125 S. Ct. 687, 160 L. Ed. 2d 611 (2005) ("Because the meaning of [the statute] is plain and unambiguous, we need not accept petitioner's invitation to consider the legislative history.  But even were we to do so, we would reach the same conclusion.").  This Court does not find

§ 1123(d) to be ambiguous. Accordingly, the legislative history cannot be used to alter its meaning.

Second (and alternatively), the legislative history *hurts* rather than helps Moody's position. Of course, the particular issue before the Supreme Court in *Rake* concerned home mortgages. But, the Congressional repair to *Rake* solved the issue by a broader declaration—*Thou shall look to state law when determining cure amounts*. Congress did not limit the cure to the narrow problem that *Rake* created. Congress could have simply amended § 1322 of the Bankruptcy Code. Instead, Congress determined that all cures (including the one faced by Moody) should be determined in accordance with state law and the underlying agreement.

Moody's second argument is that the plain meaning of § 1123(d) leads to the conclusion that default interest is not due in this case. Under this argument, Moody argues that neither the note with RLJ nor state law allow for a cure of an accelerated note. Since no cure is allowed, it is not possible to determine the amount of the cure. Because it is not possible to determine the amount of the cure, default interest may not be included. Of course, this argument proves far too much. The obvious "cure" under that interpretation of the statute would simply be that Moody must pay the full amount of the accelerated debt. That solution would be entirely inconsistent with § 1123(a)(5)(G) (allowing a plan to cure a default) and § 1124(2) (providing that a claim is unimpaired even if de-accelerated under the plan). Under this argument, one can reach no conclusion about whether default interest is allowed.

There is a straightforward answer to the question, fully incorporated into the Bankruptcy Code. To find the answer, we begin with first principles. At its most fundamental level, a business bankruptcy case is designed to maximize the returns to creditors holding claims against the estate, while allowing a debtor to reorganize. *Fla. Dept. of Revenue v. Piccadilly Cafeterias,*

*Inc.,* 554 U.S. ----, 128 S. Ct. 2326, 2339, 171 L. Ed. 2d 203 (2008) ("Chapter 11 strikes a balance between a debtor's interest in reorganizing and restructuring its debts and the creditors' interest in maximizing the value of the bankruptcy estate."). Maximizing creditor recoveries may be done with a reorganization of the business or with its liquidation, but it is a fundamental requirement. *See* 11 U.S.C. § 1129(a)(7)(A)(ii).

One of the first steps in maximizing recovery is determining the amount of the claims. That is governed by § 502 of the Bankruptcy Code. 11 U.S.C. § 502. With the exception of a few narrow types of claims (e.g., claims for future losses under a rejected lease), claims are determined in accordance with state law. This principle was recently restated by the Supreme Court:

> Indeed, we have long recognized that the "'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.'" [*Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000)] (quoting *Butner v. United States,* 440 U.S. 48, 57, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979); citation omitted). Accordingly, when the Bankruptcy Code uses the word "claim"—which the Code itself defines as a "right to payment," 11 U.S.C. § 101(5)(A)—it is usually referring to a right to payment recognized under state law. As we stated in *Butner*, "[p]roperty interests are created and defined by state law," and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." 440 U.S., at 55, 99 S. Ct. 914; accord, *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 161, 67 S. Ct. 237, 91 L. Ed. 162 (1946) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law").

*Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-51, 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007).

There is no dispute that RLJ has a claim for default interest under state law. Nor is there a dispute that claims must be determined, in accordance with state law, as of the petition date. *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 239, 163 67 S. Ct. 237, 91 L. Ed. 162 (1946). This necessarily includes default interest until the petition date. *In re Star Trust,* 237 B.R. 827, 836 (Bankr. M.D. Fla. 1999). The provision of the Bankruptcy Code that allows for confirmation of a plan over the objection of an unimpaired creditor is § 1129(a)(8). 11 U.S.C. § 1129(a)(8). The text of that provision holds that it is the claim that must not be impaired. When evaluating the treatment of the claim as unimpaired, the Court must begin with the claim itself—under § 502. 11 U.S.C. § 502 (entitled "Allowance of claims or interests"). Because RLJ's allowed claim must include pre-petition default interest, the default interest is a portion of the claim that must be unimpaired under § 1129(a)(8).

With respect to post-petition amounts that must be treated to cure the note, guidance from § 1123(d) is quite direct. The amount is determined in accordance with state law, without regard to § 506(b) of the Bankruptcy Code. 11 U.S.C. § 1123(d). Section 506(b) limits the allowance of post-petition interest and other charges to the excess value of the collateral held by a secured creditor. 11 U.S.C. § 506(b). By eliminating consideration of § 506, § 1123(d) merely requires a straightforward analysis of the note under state law.[5]

---

[5] The Court recognizes the tension between a claim-based evaluation of lack of impairment and the application of § 1123(d) to post-petition amounts that are required to effect a cure. Among other things, this tension demonstrates that the Bankruptcy Code does not precisely equate curing a default with unimpairment of a claim. Nevertheless, the Court does not believe that the statute can be read to determine pre-petition cure amounts on a different basis than post-petition cure amounts. Both must be determined "in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d). As set forth in the body of this Memorandum Opinion, the pre-petition claim for default interest is allowed under § 502 and must be "not impaired under the plan" pursuant to § 1129(a)(8) if RLJ's vote is not to be counted. Because the pre-petition claim *must* be paid with default interest and because the post-petition cure is determined on the same basis as the pre-petition cure amount, the interest for the two periods must be calculated in the same manner.

So, what is the cash amount of the cure payment?  The Court believes that the amount is best represented by a formulaic approach, as follows:

|  | **Description** | **Statutory Reference** |
|---|---|---|
| **Start** | Allowed claim pursuant to state law. | § 502 |
| **Plus** | Post petition amounts arising under state law. | § 1123(d) |
| **Minus** | Amounts accelerated under state law. | § 1124(2) |
| **Minus** | Amounts demanded under state law that would not otherwise have been presently payable without the demand. | § 1124(2) |
| **Plus** | Compensation for reasonable reliance on the acceleration or demand. | § 1124(2)(C) |
| **Plus** | Actual pecuniary loss resulting from a failure to perform a non-monetary obligation. | § 1124(2)(D) |

To leave the claim unimpaired, the amounts subtracted above must be paid on the dates required under applicable non-bankruptcy law, without regard to any pre-petition acceleration or demand.

Accordingly, the Court rejects Moody's arguments and holds that—in order to treat RLJ as unimpaired—RLJ's default interest rights must be preserved.[6]

### Due Date of Default Interest

In order for the Court to recognize the treatment of a claim as unimpaired, the Court must assure that state law rights are generally preserved.  11 U.S.C. § 1124(2)(E).  However, nothing in § 1124 requires that payments be made any sooner than otherwise required under the parties' contracts.

---

[6] A dispute exists as to whether RLJ refused tender of a proper cure.  The Court will consider the evidence on that issue at the appropriate time.  Accordingly, the Court does not presently rule on the amount of the default interest.

The due dates of regular installment payments are plainly set forth in the note as being "on the sixth day of each month." However, the note provides no specific due date for the payment of default interest.

That is not to say that the default interest is never payable. Indeed, the note is clear that the default interest is added to the Debt and must be satisfied not later than one day after maturity. But, there is no specific provision by which one can determine the precise date on which each payment of default interest is due.

As set forth in more detail below, the note must be interpreted to make the default interest payable either along with the accelerated debt or on demand.

To provide a better understanding, certain portions of the note are reproduced intact:

> 3. **Default and Acceleration.** The whole of the unpaid principal sum of this Note, together with all interest accrued and unpaid thereon, all interest accrued thereon, and all other sums due under the Mortgage (hereinafter defined), the Loan Documents and this Note (all such sums hereinafter collectively referred to as the "Debt") shall without notice become immediately due and payable at the option of Payee if any payment due on the Maturity Date is not paid on such date or if any other payment required in this Note is not paid on or before the date when due (subject to any express notice and cure period specifically set forth in the Mortgage) or if any Event of Default (as defined in the Mortgage) occurs, and further provided that the Debt shall automatically become immediately due and payable, without notice or any exercise of any option on the part of Payee, if an Event of Default of the type set forth in Section 22(g) of the Mortgage occurs with respect to Maker. All of the terms, covenants and conditions contained in the Mortgage and the other Loan Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event that it should become necessary to employ counsel to collect the Debt or to protect or foreclose the security hereof, Maker also agrees to pay reasonable attorneys' fees for the services of such counsel whether or not suit be brought; provided, however, Maker shall not be required to pay interest on the entire unpaid principal sum at the Default Rate (as hereinafter defined) in the event Maker pays the Debt in full one (1) business day following the Maturity Date.
>
> 4. **Default Interest.** Maker does hereby agree that upon the occurrence and during the continuance of an Event of Default or upon the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire unpaid principal sum at the rate of 5% above the Interest Rate (the "Default Rate"). The Default Rate shall be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt. This charge shall be added to the Debt, and shall be deemed secured by the Mortgage. This section, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default. In the event the Default Rate is above the maximum rate permitted by applicable law, the Default Rate shall be the maximum rate permitted by applicable law.

It is clear that paragraph 4 of the note requires both the accrual and the payment of default interest by the Debtor. However, nothing in the note states the date on which default interest must be paid. At oral argument, RLJ argued that the default interest is payable on demand pursuant to paragraph 22(b) of the deed of trust.

Sentence 2 of paragraph 4 states that the default rate will be computed until the collection of the Debt. However, sentence 1 makes clear that the accrual of default interest is only "upon the occurrence and during the continuance of an Event of Default." The "Debt" referenced in

16 / 20

sentence 2 is defined in paragraph 3 as including all sums due on the note, including principal, interest and other charges. Indeed, the third sentence of paragraph 4 adds the default interest to the Debt.

In interpreting the contract, the Court must strive to give meaning to all of its provisions "so that none will be rendered meaningless." *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005). The second and third sentences of paragraph 4 are meaningless if the default interest is payable, without demand, each day as it accrues. The second and third sentences are given meaning only if the default interest accrues until maturity or until demand following an Event of Default.

The Court examines the two alternatives. Under the first alternative, the interest accrues and is due at maturity. If that is the correct interpretation, then Moody need not pay the default interest in cash in order to reinstate the maturity of the note. It must only recognize that the default interest exists and will be due at a future date.

Under the second alternative, the default interest became due when properly demanded by RLJ or its predecessor. This eventuality is governed by § 1124 of the Bankruptcy Code. A lender is unimpaired "notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to ***demand*** or receive accelerated payment . . . ." 11 U.S.C. § 1124(2) (emphasis added). Accordingly, if the due date of the default interest was based on the holder's ability to demand immediate payment pursuant to paragraph 22(b) of the deed of trust (but the payment was otherwise due at maturity), then the default interest may be reinstated under § 1124(2)(B).

Under either alternative—the one urged by Moody or the one urged by RLJ—RLJ need not receive a current cash payment of the default interest in order for RLJ to be unimpaired under

17 / 20

§ 1124 of the Bankruptcy Code. However, the duty to pay the default interest, if and when it becomes payable, must be recognized by Moody.

### Forgiveness of Default Interest

The promissory note and deed of trust in this case have a provision that is, in this Judge's experience, *sui generis*. The default provisions under the promissory note contain language that allows a waiver of the payment (but not the accrual) of default interest if the mortgage note is paid in full not later than one business day following the maturity date.

Moody argues that—if default interest is allowed—it must be forgiven if the loan is fully paid by one day after the maturity date. RLJ argues that this provision only means that no default interest will be charged for the one day period following maturity.

The relevant provision is the last sentence of paragraph 3 of the note. The issue is whether that sentence provides for the non-payment of *all* accrued default interest or only non-payment of one day of default interest.

The Court finds that until such time as Moody tenders—and RLJ refuses—timely payment without default interest, the matter is not ripe[7] for adjudication. The ripeness doctrine is a justiciability doctrine derived from Article III's "case" or "controversy" requirement and from "prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 809, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003). A principal purpose of the doctrine is the avoidance of premature adjudication. *Id.* A claim is premature—and,

---

[7] The Court recognizes that the ripeness doctrine is traditionally asserted when a party is seeking injunctive or declaratory relief. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58, 113 S. Ct. 2485, 125 L. Ed. 2d 38 (1993). The substance of the request in this case is a declaratory judgment. Since the Fifth Circuit instructs courts to consider the substance, rather than the labels, of pleadings, the Court will consider the dispute at issue as one for declaratory relief. *See Armstrong v. Capshaw, Goss & Bowers,* 404 F.3d 933, 936 (5th Cir. 2005) (noting district courts must determine the true nature of a pleading by its substance, rather than its labels (citing *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (*en banc*) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label'" (quoting *Bros. Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir. 1963)))))).

therefore, not ripe for adjudication—if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) (quotations omitted). In particular, ripeness requires courts to consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)).

In this case, the Court recognizes that Moody may—at some date between now and September 7, 2017 (i.e., one day after maturity)—wish to pay the note and avoid the default interest. However, such a wish is undoubtedly contingent in nature, and the full payment of the note may not occur at all. If full payment is tendered at some point in the future, then at that time, there may be immediate and tangible harm to Moody's ability to sell or refinance the property. But at this point there no hardship to Moody from the Court's withholding of consideration of this issue. The Court also recognizes that RLJ may suffer a significant damages lawsuit if it refuses to release its lien on a proper tender between now and September 7, 2017. Nevertheless, no such tender of full payment has been made or is on the horizon. As with Moody, there is no hardship inflicted on RLJ by the Court's decision not to consider this issue at this time. Similarly, as stated above, without a tender by Moody, this issue is simply not ripe for adjudication.[8]

---

[8] The Court notes the possibility that this matter will quickly ripen at confirmation. For example, if the Debtor is only able to demonstrate feasibility pursuant to § 1129(a)(11) of the Bankruptcy Code with a finding that the amounts are not due—and the Court concludes that confirmation is dependent on such a finding—the matter may become ripe. However, no such allegation is presently pending before the Court and the Court will not rule until the dispute ripens.

**Conclusion**

Confirmation of a chapter 11 plan will be denied unless it either (i) treats RLJ as unimpaired and allows default interest on RLJ's claim, with payment of the default interest to be made, if at all, at maturity or upon future acceleration of the loan; or (ii) treats RLJ as impaired and provides for payment of RLJ's claim in accordance with the requirements of § 1129 of the Bankruptcy Code.

SIGNED **March 24, 2010.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE